# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| STEPHEN CRAIG BURNETT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. CIV-10-769-M |
| | ) | |
| KIM LEATHERWOOD, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff, a state prisoner appearing pro se, brings this action pursuant to 42 U.S.C. § 1983, alleging a violation of his constitutional rights. Chief United States District Judge Vicki Miles-LaGrange has referred the matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). Currently before the Court are the cross motions for summary judgment filed by Defendant Morton and Plaintiff. For the following reasons, the undersigned recommends that the motion for summary judgment of Defendant Morton be granted, and that the motion for summary judgment of the Plaintiff be denied.

## I. INTRODUCTION

In his four-count civil rights complaint, Plaintiff names six Defendants: Kim Leatherwood, identified as mail clerk; Joseph Taylor, warden of the Cimarron Correctional Facility (CCF); Joseph Sebenick, internal affairs officer at CCF; Michael Munday, disciplinary hearing officer at CCF; Kathy Jones, warden's secretary and grievance officer at CCF; and Debbie Morton, identified as the administrative review authority for the

Oklahoma Department of Corrections.[1]

In the first count, which is against Defendants Leatherwood and Sebenick, Plaintiff alleges that Sebenick and a former mail clerk at CCF, Linda Jester, interfered with his right to send legal mail to this Court in May of 2010, and did so in retaliation for a lawsuit he had recently filed against Jester and Sebenick.[2] Petition, 4, 8. In his second count against Defendants Leatherwood and Sebenick, which partially overlaps his claim in count one, Plaintiff alleges that Jester and Sebenick took several actions against him in retaliation for three previous lawsuits filed against Jester and a recent lawsuit against Sebenick. Petition, 4, 10. The actions he complains of include the delay in mailing his papers to the court as alleged in count one, and three misconducts issued immediately after his most recent lawsuit was filed. Complaint, 10. In Count Three, Plaintiff alleges that his rights to due process and equal protection were violated by Defendants Sebenick, Munday, Taylor, and Morton in connection with their respective roles in the handling of the three misconduct charges referenced in the second count. Petition, 5, 11. In his fourth and final count, Plaintiff contends that Defendants Jones and Taylor violated his rights to equal protection, free speech

---

[1] The Defendants other than Defendant Morton will be referred to as the "CCF Defendants" unless the action of a particular co-defendant is relevant to the issues raised by the cross-motions for summary judgment which are addressed in this Report and Recommendation.

[2] The papers being mailed were in connection with <u>Burnett v. Morton</u>, No. CIV-10-257-M (W.D. Okla. Mar. 12, 2010). Although Plaintiff initially "invited" the Court to consolidate this case with that one, he later responded that he did not wish the cases to be joined. [Doc. Nos. 15, 16]. Judgment has since been entered in favor of all defendants in that case, and Plaintiff's appeal from that judgment is now pending. <u>Burnett v. Morton,</u> No. CIV-10-257 (W.D. Okla. Dec. 9, 2010) (Miles-LaGrange, J.), <u>appeal filed</u> Case No. 10-6285 (10th Cir. Dec. 17, 2010).

and freedom from retaliation when Defendant Jones – in retaliation for his lawsuit against her – refused to allow him to make telephone calls and Defendant Taylor denied his grievance on the matter. Petition, 5, 12. Although all Defendants and the Plaintiff have filed dispositive motions, the current Report and Recommendation will be confined to the dispositive motions concerning Plaintiff's claim against Defendant Morton.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only where the pleadings and any supporting documentary materials show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the court views the evidence and the inferences drawn from the record in the light most favorable to the nonmoving party. Calhoun v. Gaines, 982 F.2d 1470, 1472 (10th Cir. 1992); Manders v. Oklahoma, 875 F.2d 263, 264 (10th Cir. 1989). A dispute is "genuine," when viewed in this light, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248 (1986). "Material facts" are "facts that might affect the outcome of the suit under the governing law." Id.

To obtain summary judgment, the moving party need not affirmatively negate the nonmovant's claims. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Rather, the moving party initially bears the burden only of " 'showing' - that is, pointing out to the district court - that there is an absence of evidence to support the nonmoving party's case." Id., at 325. Once the moving party has satisfied this burden, the burden shifts to the

3

nonmoving party to show that there is a genuine issue of material fact. Id. at 324. The nonmoving party "may not rest upon mere allegation" in his pleading to satisfy this requirement Anderson, 477 U.S. at 256. Rather, Fed. R. Civ. P. 56 "requires the nonmoving party to go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324.

### III. UNDISPUTED FACTS

Based upon the Complaint, the Special Report[3], and the evidentiary material appended to the various filings in this case, the following material facts are uncontroverted, deemed admitted, or, where disputed, viewed in the light most favorable to Plaintiff. Immaterial facts and facts not properly supported by the record are omitted. Furthermore, the materiality of facts listed herein is with reference to Plaintiff's claims against Defendant Morton; some undisputed facts that are material to Plaintiff's claims against the other Defendants have been omitted here for the sake of both brevity and clarity.

On February 1, 1996, Plaintiff began serving a life sentence for first degree murder. Defendant Debbie Morton's Motion to Dismiss/Summary Judgment and Brief in Support (Morton's Motion) Ex. 1; CF-1993-3131, District Court of Tulsa County. At that time, Plaintiff was already in the custody of the Oklahoma Department of Corrections (DOC) serving a sentence of imprisonment for a conviction of larceny of an automobile. Morton's

---

[3]The Special Report has been treated as an affidavit. See Hall v. Bellmon, 935 F.2d 1106, 1111 (10th Cir. 1991) (explaining role of a special report in summary judgment proceedings).

4

Motion, Ex. 1. Plaintiff was housed at the Cimarron Correctional Facility (CCF) at all times relevant to the issues raised in this action.[4] Morton's Motion, Ex. 1, p. 2; Complaint, 8, 10, 11, 12. Because he is serving a life sentence, Plaintiff does not receive earned credits. Complaint, 11.

On March 12, 2010, Plaintiff filed a civil rights lawsuit in this district naming several defendants, including three who are also Defendants herein: Joseph Taylor, Joseph Sebenick, and Debbie Morton. Case No. CIV-10-257-M, United States District Court for the Western District of Oklahoma. United States Magistrate Judge Gary Purcell – to whom that case had been referred – directed Plaintiff to file an amended complaint by May 20, 2010, and on Saturday, May 8, 2010, Plaintiff placed an envelope containing his amended complaint in the outgoing mail at the CCF mailroom. Special Report, Ex. 2. After he inquired via a request to staff dated May 12, 2010, Plaintiff learned that the envelope was mailed that same day. Special Report, Ex. 2, p. 4.[5]

On May 12, 2010, Defendant Joseph Sebenick filed an incident report in which he stated that Plaintiff had placed 23 postage stamps on a priority package to be mailed to this Court to be mailed out on May 12, 2010, and that since January 1, 2010, Plaintiff had used more stamps than he had purchased indicating that he was receiving stamps from other inmates. Special Report, Ex. 3, p. 27. A disciplinary hearing on a charge of bartering was

---

[4]On September 10, 2010, Plaintiff was transferred to the Davis Correctional Facility in Holdenville, Oklahoma. Morton's Motion, Ex. 1, p. 2.

[5]The exhibits attached to the Special Report are not paginated, so the undersigned has used the Court's electronic docket page number as reference.

held on May 17, 2010, and Plaintiff was found guilty based on the statement of Defendant Sebenick and a check of commissary records from September of 2009 through the date of the alleged offense. Special Report, Ex. 3, p. 25. Plaintiff received discipline in the form of a loss of 60 earned credits and a fine of $5.00. Id. Defendant Taylor affirmed the disciplinary action on May 18, 2010. Id. However, upon completion of the Offender Misconduct Appeal Form Due Process Review, Defendant Taylor found that relevant witnesses were not allowed at the hearing, their written statements were not submitted, and there was no discretionary action form regarding them. Special Report, Ex. 3, p. 19. Accordingly, he ordered that a rehearing be conducted. Id. However, a rehearing has never been held; according to Defendant Taylor this was because the "Oklahoma Department of Corrections said to hold disciplinary proceedings until further notice." Defendant Taylor's Responses to Plaintiff's Request for Interrogatories (attached to Second Motion to Determine Sufficiency of CCF Defendants Discovery Responses) [Doc. No. 60-3, p. 1]. Defendant Taylor also stated that to his knowledge, none of the security points assigned to Plaintiff due to this misconduct conviction were ever reversed or dismissed. Response to Court Order, p. 3 [Doc. No. 66-1]. There is no indication that this misconduct offense was ever appealed to the administrative review authority.

On May 14, 2010, Plaintiff was accused of a second misconduct offense that allegedly occurred on March 26, 2010. Special Report, Ex. 3, p. 9. He was charged with the manufacture/possession of contraband for mailing out legal mail of several inmates (Offense 042). The reporting employee was Defendant Sebenick, a defendant also in Case No. CIV-

10-257-M. A hearing was conducted on June 2, 2010, and Plaintiff was found guilty; the discipline imposed was the loss of 60 earned credits and a $5.00 fine. Special Report, Ex. 3, p. 8. The guilty finding was affirmed by Defendant Taylor on June 3, 2010. Special Report, Ex. 3, p. 8. Defendant Taylor was also a defendant in Case No. CIV-10-257-M, the then-pending lawsuit as well as the case now before the Court. An "Offender Misconduct Appeal Form Due Process Review" was completed on June 21, 2010, and Defendant Taylor found that Plaintiff received due process and that the statement of Defendant Sebenick provided evidence that Plaintiff was in possession of another offender's mail. Special Report, Ex. 3, p. 7. Plaintiff filed an appeal with the administrative review authority, and on June 28, 2010, his appeal was returned by Defendant Debbie Morton, Director's Designee, for the following reason "you are currently serving a sentence of Life (CF-93-3131) and are not eligible to receive earned credits, As you are ineligible to receive earned credits you are not entitled to a due process review." Special Report, Ex. 3, p. 3.

A third offense report was issued against Plaintiff on May 20, 2010, alleging that on May 19, 2010, Plaintiff was in possession of legal mail of other inmates which he was mailing out of the facility. Special Report, Ex. 3, p. 44. A disciplinary hearing was held on June 2, 2010, and Plaintiff was found guilty. Discipline in the form of a $5.00 fine and revocation of 60 earned credits was imposed. Special Report, Ex. 3, p. 41. Defendant Taylor affirmed the misconduct conviction on June 3, 2010. On June 29, 2010, acting warden J. Middleton conducted a due process review and affirmed the misconduct conviction. Special Report, Ex. 3, p. 38. Plaintiff appealed to the administrative review authority, and Defendant

7

Morton returned his appeal unanswered on July 6, 2010, stating "You are currently serving a sentence of Life (CF 93-3131) and are not eligible to receive earned credits. As you are ineligible to receive earned credits you are not entitled to a due process review." Special Report, Ex. 3, p. 34.

## IV. MOTION FOR SUMMARY JUDGMENT OF DEFENDANT MORTON

Defendant Morton has moved for summary judgment on six grounds. However, it is unnecessary to address all of her arguments since the undersigned finds she is entitled to summary judgment on some of the grounds.

The only claims made against Defendant Morton are contained in Count Three of the Complaint, in which Plaintiff alleges that her final decision on the two misconduct appeals which reached the administrative review authority[6] denied his right to due process and equal protection. Complaint, 11. He alleges that her decision not to review his misconducts because he is not eligible for earned credits exceeded her authority by "making policy, with a culpable state of mind." Id.

**A. DUE PROCESS**

Plaintiff has continually emphasized that he is not claiming a right to due process stemming from any liberty interest in earned credits, see e.g. Objection to Dispositive Motion of Defendant Morton, 9. Instead, he claims that Defendant Morton denied his right to due

---

[6]As noted, Defendant Taylor ordered a rehearing in the charge of bartering related to Plaintiff's alleged use of more stamps than he had purchased, so no administrative review authority appeal occurred with regard to that misconduct offense.

8

process by failing to entertain his appeal from two misconduct convictions. However, prison policies or guidelines establishing additional procedures to be employed in disciplinary proceedings, such as the appeal procedure at issue here, do not create a liberty interest protected by the Due Process Clause even if written as mandatory directives. Muhammad v. Wiley, Nos. 08-1351, 08-1383, 330 Fed Appx. 165, 167 n. 1 (10th Cir. May 20, 2009); Jones v. Cowley, Nos. 91-6271, 91-6283, 1991 WL 252667 at *4 (10th Cir. Nov. 26, 1991)[7]; Sandin v. Conner, 515 U.S. 472, 480-484 (1995). Thus, because even mandatory prison guidelines do not create a liberty interest, their deprivation does not trigger due process protections. See Keck v. Zenon, No. 07-1100, 240 Fed. Appx. 815, 818 (10th Cir. July 20, 2007). Accordingly, Defendant Morton is entitled to summary judgment because the right to an appeal in a prison disciplinary setting is established by DOC's grievance policy, and her failure to afford an appeal did not violate Plaintiff's right to due process. Lowe v. Sockey, No. 00-7109, 36 Fed. Appx. 353, 360 (10th Cir. April 2, 2002) (dismissing due process claim based on prison officials' failure to respond to appeal of finding of guilt at prison disciplinary hearing "as the Supreme Court has already determined that there simply exists no due process right to such an appeal").

### B. Equal Protection

Plaintiff also claims that Morton's failure to afford a due process appeal to prisoners who are not eligible for earned credits is a violation of the Equal Protection Clause of the

---

[7] These and any other unpublished dispositions are cited as persuasive authority pursuant to Fed.R.App.P. 32.1 and Tenth Circuit Rule 32.1.

Fourteenth Amendment. Complaint, 11. He clarifies in his response to Morton's motion that his claim is that allowing prisoners who are eligible for earned credits to have an appeal, while failing to do so with regard to those who are not, is arbitrary and in violation of the right to equal protection. Objection to Dispositive Motion of Morton, 3.

Plaintiff again misses the mark. In order to state a valid equal protection claim he must show that "the distinction between himself and other inmates was not reasonably related to some legitimate penological purpose." Templeman v. Gunter, 16 F.3d 367, 371 (10th Cir. 1994). The "Equal Protection Clause requires the government to treat similarly situated people alike." Barney v. Pulsipher, 143 F.3d 1299, 1312 (10th Cir. 1998) (citing City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985)). Thus, in order to state an equal protection claim, Plaintiff must show that he was treated differently than other inmates as well as allege facts sufficient to "overcome a presumption of government rationality." Brown v. Zavaras, 63 F.3d 967, 971 (10th Cir. 1995). Here, Plaintiff only maintains that he was treated differently than inmates who are eligible for earned credits. Complaint, 11; Objection to Dispositive Motion of Morton, 3. He has not shown that it is not rational to handle the appeals of those who receive discipline that may affect the duration of their confinement differently from those who receive discipline of a different nature. The revocation of earned credits by definition affects the duration of an inmate's confinement, whereas a fine or change in classification does not necessarily do so. Allocating the resources needed for the processing of appeals on that basis is therefore rational and has a legitimate penological purpose. Accordingly, it is recommended that Defendant Morton's motion for summary

judgment be granted.

## V. PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

Plaintiff's cross-motion for summary judgment is based on what he describes as three "undisputed issues of law." First, he claims that he has a right to due process protections before being punished regardless of his eligibility for earned credits. Plaintiff's Cross Motion for Summary Judgment Against Defendant Debbie Morton, 2. Second, he claims that he is entitled to equal protection of the law with regard to disciplinary matters even if he is ineligible for earned credits. Id. Finally, he contends that there is no required showing of actual injury with regard to his claims of denial of the "Freedom of Speech" and his right to be free from retaliation. Id.

The undersigned's recommendation with regard to the first two points made by Plaintiff is obvious in light of the recommendation that Defendant Morton be granted summary judgment. Without repeating the same analysis here, those points are (1) DOC's policy providing for an appeal from a misconduct conviction does not create a liberty interest subject to due process protections; and (2) there is a rational reason for treating the appeals of inmates whose earned credits have actually been revoked differently than the appeals of inmates who are ineligible to receive sentence reduction through earned credits.

With regard to Plaintiff's third point in support of his motion for summary judgment, Defendant Morton first notes that Plaintiff has not made any claims under the First Amendment or of retaliation against her. Defendant Debbie Morton's Response to Plaintiff's Cross Motion for Summary Judgment and Brief in Support, (Morton's Response), 10.

Plaintiff replies that he did argue retaliation and interference with his First Amendment rights in his grievances, grievance appeals, and write up appeals. Plaintiff's Reply to Morton's Response to Plaintiff's Cross Motion, 10. He claims that he clearly alleged in his grievances that the CCF Defendants limited his phone calls and refused to make photocopies of previous grievances in order to retaliate against him for his litigation activities. Id. at 10-11.

The undersigned agrees with Defendant Morton that Plaintiff's Complaint, even when liberally construed, contains no allegation that she retaliated against him. His only allegation is that she "was the chief decisionmaker in the denials of relief, and her signature is on them." Although prison officials may not retaliate against or harass an inmate because of the inmate's exercise of his constitutional rights, an inmate claiming retaliation must "allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights." See Peterson v. Shanks, 149 F.3d 1140, 1144 (10th Cir. 1998). Plaintiff's allegation that Defendant Morton was the "chief decisionmaker" and that "her signature is on" the appeal decisions are not specific facts showing that she was motivated by retaliation.

Furthermore, Plaintiff's claims that she was the "chief decisionmaker" and aware that he had alleged retaliation by the CCF Defendants is not enough to maintain a claim for retaliation against Defendant Morton. Personal participation is an essential allegation in a § 1983 claim, and in Ashcroft v. Iqbal, __ U.S. __, 129 S. Ct. 1937, 1949 (2009), the Supreme Court held that supervisors can only incur liability for their own misconduct.

> Respondent's conception of "supervisory liability" is inconsistent with his accurate stipulation that petitioners may not be held accountable for the misdeeds of their agents. In a § 1983 suit or a Bivens action-where masters do

not answer for the torts of their servants-the term "supervisory liability" is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct. In the context of determining whether there is a violation of clearly established right to overcome qualified immunity, purpose rather than knowledge is required to impose Bivens liability on the subordinate for unconstitutional discrimination; the same holds true for an official charged with violations arising from his or her superintendent responsibilities.

Ashcroft v. Iqbal, ___U.S. ___, 129 S.Ct. 1937, 1949 (2009). Similarly, without more, the denial of grievance or misconduct appeals does not constitute personal participation: "We agree with the reasoning in our previous unpublished decisions that a denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983." See Gallagher v. Shelton, 587 F.3d 1063, 1069 (10th Cir. 2009); Dodds v. Richardson, 614 F.3d 1185, 1194-1196 (10th Cir. 2010), cert. denied, 131 S. Ct. 2150 (2011).

It follows from these decisions that Defendant Morton's liability for retaliatory conduct cannot be based solely on the fact that she was presented with an appeal alleging wrongdoing on the part of employees at CCF. Id. If that were the case the routine performance of her job, which requires reviewing such allegations from across the entire Oklahoma prison system, would routinely expose her to liability for incidents in which she had no personal knowledge or involvement. Accordingly, it is recommended that Plaintiff's cross-motion for summary judgment be denied.[8]

---

[8]The undersigned notes that in response to Defendant Morton's motion for summary judgment and in support of his own cross-motion, Plaintiff continually refers to incidents involving
(continued...)

**RECOMMENDATION**

For the reasons set forth above, it is recommended that the motion for summary judgment of Defendant Morton [Doc. No. 42] be granted, that Plaintiff's cross-motion for summary judgment against Defendant Morton [Doc. No. 56] be denied, and that judgment be entered if favor of the Defendant Morton. Plaintiff is advised of his right to file an objection to this Report and Recommendation with the Clerk of this Court by August 29, 2011, in accordance with 28 U.S.C. § 636 and Fed.R.Civ.P. 72. Plaintiff is further advised that failure to make timely objection to this Report and Recommendation waives his right to appellate review of both factual and legal questions contained herein. <u>Moore v. United States</u>, 950 F.2d 656 (10th Cir. 1991). This Report and Recommendation does not dispose of all issues referred to the undersigned Magistrate Judge in the captioned matter.

**ENTERED this 8th day of August, 2011.**

_____
DOYLE W. ARGO
UNITED STATES MAGISTRATE JUDGE

---

[8](...continued)
the CCF Defendants. His claims against those Defendants are not relevant to his claims against Defendant Morton, and thus facts he offers in support of such allegations are not material to the motions now under consideration.