## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **STEPHEN CRAIG BURNETT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. CIV-10-769-M** |
| | ) | |
| **KIM LEATHERWOOD, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## REPORT AND RECOMMENDATION

Plaintiff, a state prisoner appearing pro se, brings this action pursuant to 42 U.S.C. § 1983, alleging a violation of his constitutional rights. Chief United States District Judge Vicki Miles-LaGrange has referred the matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). Currently before the Court is the motion for summary judgment of Defendants Taylor, Munday, Jones, Leatherwood, and Sebenick[1] [Doc. No. 35]. Plaintiff has filed a response to the motion as well as two supplemental responses. Thus, the matter is at issue and ready for disposition. For the following reasons, the undersigned recommends that summary judgment be granted in part and denied in part.

## I. INTRODUCTION

In his four-count civil rights complaint, Plaintiff names six Defendants: Kim Leatherwood, identified as mail clerk; Joseph Taylor, warden of the Cimarron Correctional

---

[1]These Defendants initially filed their motion as a motion to dismiss, but the Court gave notice to the parties under Fed.R.Civ.P. 12(d) that the motion was going to be treated as a motion for summary judgment. [Doc. No. 55].

Facility (CCF); Joseph Sebenick, internal affairs officer at CCF; Michael Munday, disciplinary hearing officer at CCF; Kathy Jones, warden's secretary and grievance officer at CCF; and Debbie Morton, identified as the administrative review authority for the Oklahoma Department of Corrections.[2]

In the first count, which is against Defendants Leatherwood and Sebenick, Plaintiff alleges that Sebenick and a former mail clerk at CCF, Linda Jester, interfered with his right to send legal mail to this Court in May of 2010, and did so in retaliation for a lawsuit he had recently filed against Jester and Sebenick.[3] Petition, 4, 8. In his second count against Defendants Leatherwood and Sebenick, which partially overlaps his claim in count one, Plaintiff alleges that Jester and Sebenick took several actions against him in retaliation for three previous lawsuits filed against Jester and a recent lawsuit against Sebenick. Petition, 4, 10. The actions he complains of include the delay in mailing his papers to the court as alleged in count one, and three misconducts issued immediately after his most recent lawsuit was filed. Complaint, 10. In Count Three, Plaintiff alleges that his rights to due process and

---

[2]The Defendants other than Defendant Morton will be referred to as the "CCF Defendants" unless the action of a particular co-defendant is relevant to the issue being discussed. Defendant Morton filed her own motion for summary judgment, and Plaintiff filed a cross-motion for summary judgment against her. The undersigned's recommendation with regard to those two motions is contained in a separate Report and Recommendation.

[3]The papers being mailed were in connection with Burnett v. Morton, No. CIV-10-257-M (W.D. Okla. Mar. 12, 2010). Although Plaintiff initially "invited" the Court to consolidate this case with that one, he later responded that he did not wish the cases to be joined. [Doc. Nos. 15, 16]. Judgment has since been entered in favor of all defendants in that case, and Plaintiff's appeal from that judgment is now pending. Burnett v. Morton, No. CIV-10-257 (W.D. Okla. Dec. 9, 2010) (Miles-LaGrange, J.), appeal filed Case No. 10-6285 (10th Cir. Dec. 17, 2010).

equal protection were violated by Defendants Sebenick, Munday, Taylor, and Morton in connection with their respective roles in the handling of the three misconduct charges referenced in the second count. Petition, 5, 11. In his fourth and final count, Plaintiff contends that Defendants Jones and Taylor violated his rights to equal protection, free speech, and freedom from retaliation when Defendant Jones – allegedly in retaliation for his lawsuit against her – refused to allow him to make telephone calls or to obtain copies of some previous grievances, and Defendant Taylor denied his grievances on the matter. Petition, 5, 12.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only where the pleadings and any supporting documentary materials show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the court views the evidence and the inferences drawn from the record in the light most favorable to the nonmoving party. Calhoun v. Gaines, 982 F.2d 1470, 1472 (10th Cir. 1992); Manders v. Oklahoma, 875 F.2d 263, 264 (10th Cir. 1989). A dispute is "genuine," when viewed in this light, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248 (1986). "Material facts" are "facts that might affect the outcome of the suit under the governing law." Id.

To obtain summary judgment, the moving party need not affirmatively negate the nonmovant's claims. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Rather, the

moving party initially bears the burden only of " 'showing' - that is, pointing out to the district court - that there is an absence of evidence to support the nonmoving party's case." Id., at 325. Once the moving party has satisfied this burden, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact. Id. at 324. The nonmoving party "may not rest upon mere allegation" in his pleading to satisfy this requirement Anderson, 477 U.S. at 256. Rather, Fed. R. Civ. P. 56 "requires the nonmoving party to go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324.

## III.  MOTION FOR LEAVE TO FILE SUPPLEMENTAL EXHIBIT

Before proceeding to the undisputed facts, the undersigned hereby denies Plaintiff's Motion for Leave to File Supplemental Exhibit [Doc. No. 77]. He states that the proffered document is a copy of a parole investigator's report regarding his parole consideration in December 2010.  Plaintiff states that his own two requests for a copy of the report were not answered and that he "received the pro bono assistance of an attorney who finally received a copy of this Report and sent it to the Plaintiff."  Plaintiff does not identify this attorney, and the document is in no way authenticated. Plaintiff does not make any of the statements regarding his acquisition of this document under penalty of perjury. Furthermore,  there are inconsistencies in the document which cast serious doubt on its authenticity.  In particular, although the document purports to have been prepared in connection with a parole hearing which occurred in December of 2010, the report is dated June 20, *2011*. Whether or not

further consideration of this irregularity is warranted, the document will not be considered in connection with the motion now under consideration.

## IV. UNDISPUTED FACTS

Based upon the Complaint, the Special Report[4], and the evidentiary material appended to the various filings in this case, the following material facts are uncontroverted, deemed admitted, or, where disputed, viewed in the light most favorable to Plaintiff. Immaterial facts and facts not properly supported by the record are omitted. Some of the undisputed facts will be addressed in a somewhat abbreviated form in this section, and will be more fully described in the context of the issues to which they pertain.

On February 1, 1996, Plaintiff began serving a life sentence for first degree murder. Special Report, Ex. 3, p. 49[5]; CF-1993-3131, District Court of Tulsa County. At that time, Plaintiff was already in the custody of the Oklahoma Department of Corrections (DOC) serving a sentence of imprisonment for a conviction of larceny of an automobile. Id. Because he is serving a life sentence, Plaintiff does not receive earned credits. Complaint, 11. Plaintiff was housed at the Cimarron Correctional Facility (CCF) at all times relevant to the issues raised in this action. Complaint, 8, 10, 11, 12. On September 13, 2010, Plaintiff was transferred to the Davis Correctional Facility in Holdenville, Oklahoma. [Doc. No. 14].

 On March 12, 2010, Plaintiff filed a civil rights lawsuit in this court naming several

---

[4]The Special Report has been treated as an affidavit. See Hall v. Bellmon, 935 F.2d 1106, 1111 (10th Cir. 1991) (explaining role of a special report in summary judgment proceedings).

[5]The exhibits attached to the Special Report are not paginated, so the undersigned has used the Court's electronic docket page numbers for reference.

defendants, including three who are also Defendants herein: Joseph Taylor, Joseph Sebenick, and Debbie Morton. Case No. CIV-10-257-M, United States District Court for the Western District of Oklahoma. United States Magistrate Judge Gary Purcell–to whom that case had been referred–directed Plaintiff to file an amended complaint by May 20, 2010, and on Saturday, May 8, 2010, Plaintiff placed an envelope containing his amended complaint in the outgoing mail at CCF. Special Report, Ex. 2, p. 3. After he inquired via a request to staff dated May 12, 2010, Plaintiff learned that the envelope was mailed that same day. Special Report, Ex. 2, p. 4. The mailroom supervisor at CCF at that time was Linda Jester. Complaint, 8. She was a Defendant in Case No. CIV-10-257. Linda Jester has since retired, and is not a defendant in this action. Her replacement, Kim Leatherwood, was not involved in any of the acts forming the basis of Plaintiff's claims in this action. See Complaint, 8. Plaintiff states that he only named Kim Leatherwood as a Defendant because she replaced Jester, whose personal address was not available to him for service of summons. Id. He adds that he is suing Leatherwood in her official capacity only and is not seeking monetary damages from her, but only injunctive relief. Complaint, 3.

After Plaintiff received Linda Jester's response regarding the status of the package he placed in the CCF mailroom on May 8, 2010, which simply read "it was mailed today," Plaintiff filed a grievance regarding the matter, claiming that Jester deliberately delayed mailing his package and was motivated by retaliation for past lawsuits Plaintiff filed against her. Defendant Debbie Morton's Motion to Dismiss/Summary Judgment and Brief in Support

(Morton's Motion) Ex. 2; Special Report, Ex. 2, p. 2-3[6]; Special Report, Ex. 2, p. 4; Plaintiff's Objection to Dispositive Motion of CCF Defendants, Ex. 1, p. 2. This grievance, No. 10-55, was returned unanswered by a form upon which two boxes were checked: "8. Not a grievable issue (misconduct, litigation pending, not within/under the authority/control of the Department of Corrections, no remedy allowed by the department, etc.)"; and "20. Other. Because your papers were mailed and did meet your deadline. There was no harm done. Since the papers were delivered in a timely matter this is not a grievable issue." Special Report, Ex. 2, p. 2. The CCF form used to return Plaintiff's grievance also contains a box that can be checked which reads "You may resubmit your corrected grievance within ten calendar days of receipt of this notice. **DO NOT RETURN THIS FORM.**" See id. This box was not checked.

The DOC grievance policy provides that "If the inmate/offender does not follow instructions as explained in this procedure and on the grievance forms, the grievance may be returned unanswered for proper completion. *If allowed*, the inmate/offender must properly resubmit the grievance within ten calendar days of receipt." Special Report, Ex. 6, p. 8 (DOC Policy 090124(V)(A)(7)). CCF's Inmate/Resident Grievance Procedures are silent on the matter of whether the inmate may correct and resubmit a grievance returned unanswered. See Special Report, Ex. 7. Defendant Kathy Jones stated in response to

_____

[6]A copy of the grievance is contained in both the Special Report and Plaintiff's response to the motion for summary judgment of the CCF Defendants; however, those copies omit the back page of the grievance which contained additional information regarding the nature of Plaintiff's Complaint. Defendant Morton is the only one who included a complete copy of the grievance materials related to the mailing issue, so it has been cited.

Plaintiff's interrogatory asking why she did not check the box allowing resubmission, and what the failure to check it means to an inmate: "I am not sure why the box was not checked, I did not routinely check it. At that time I felt that the offenders understood that they could re-submit a grievance if I returned it to them with instructions on what they needed to do to correct it. There were no negative repercussions implied or intended by my not checking this box." Defendant Kathy Jones' Supplemental Responses to Plaintiff's Request for Interrogatories, Supplemental Response No. 3 (attached to Response to Court Order, Doc. 66-3, p. 2). However, in her responses to Plaintiff's interrogatories, Defendant Morton, the Director's Designee, stated that an inmate is not allowed to resubmit an unanswered appeal to the administrative review authority if the box allowing resubmission is not checked. Defendant Morton's Responses to Plaintiff's Interrogatories, Response No. 11 (attached to Second Motion to Determine Sufficiency of [D]efendant Morton's Discovery Reply, Doc. 71-1, p. 5). In any event, Plaintiff neither resubmitted the grievance regarding the mailing of his amended complaint nor appealed to the administrative review authority.

On May 12, 2010, Defendant Sebenick filed an incident report in which he stated that Plaintiff had placed 23 postage stamps on a priority package addressed to this Court to be mailed out on May 12, 2010, and that since January 1, 2010, Plaintiff had used more stamps than he had purchased indicating that he was receiving stamps from other inmates. Special Report, Ex. 3, p. 27. A disciplinary hearing on a charge of bartering was held before disciplinary hearing officer Defendant Munday on May 17, 2010, and Plaintiff was found guilty based on the statement of Defendant Sebenick and a check of commissary records

from September of 2009 through the date of the alleged offense. Special Report, Ex. 3, p. 25. Plaintiff received discipline in the form of a loss of 60 earned credits and a fine of $5.00. Id. Defendant Taylor affirmed the disciplinary action on May 18, 2010. Id. Upon completion of the Offender Misconduct Appeal Form Due Process Review, Defendant Taylor found that relevant witnesses were not allowed at the hearing, their written statements were not submitted, and there was no discretionary action form regarding them. Special Report, Ex. 3, p. 19. Accordingly, he ordered that a rehearing be conducted. Id. However, a rehearing has never been held.

On May 14, 2010, Defendant Sebenick filed a second misconduct offense against Plaintiff that pertained to an incident that allegedly occurred on March 26, 2010. Special Report, Ex. 3, p. 9. Plaintiff was found guilty; the discipline imposed was the loss of 60 earned credits and a $5.00 fine. Special Report, Ex. 3, p. 8. Defendant Taylor affirmed the finding, and upon a due process review found that Plaintiff received due process and that the statement of Defendant Sebenick provided evidence that Plaintiff was in possession of another offender's mail. Special Report, Ex. 3, p. 7.

A third offense report was issued against Plaintiff on May 20, 2010, alleging that on May 19, 2010, Plaintiff was in possession of legal mail of other inmates which he was mailing out of the facility. Special Report, Ex. 3, p. 44. A disciplinary hearing was held before disciplinary hearing officer Defendant Munday on June 2, 2010, and Plaintiff was found guilty. Discipline in the form of a $5.00 fine and revocation of 60 earned credits was imposed. Special Report, Ex. 3, p. 41. Defendant Taylor affirmed the misconduct

conviction, and acting warden J. Middleton found that due process was afforded. Special Report, Ex. 3, p. 38.

After having filed a request to staff,[7] Plaintiff filed Grievance No. 10-66[8] on March 25, 2010 complaining that he had not been able to make telephone calls "even to my attorney." Plaintiff's Objection to Dispositive Motion of CCF Defendants, Ex. 8-5; Special Report, Ex. 5, p. 3. He stated that he had been placed on level two status, and that he had heard his case manager, Ms. Wesson, leave a message for Defendant Jones informing her of his increase in level and eligibility for telephone calls. Plaintiff's Objection to Dispositive Motion of CCF Defendants, Ex. 8-5, 8-6. He alleged he was not being allowed to make phone calls or to call his attorney in retaliation. Id.

In his response denying the grievance, Defendant Taylor stated that Plaintiff had been at CCF long enough to know a phone request list has to be turned into an inmate's unit team to "have phone numbers entered." Plaintiff's Objection to Dispositive Motion of CCF Defendants, Ex. 8-4. He further noted that Plaintiff was aware that for attorneys calls, the attorneys had to provide a letter on letterhead verifying that they were his attorney of record and would accept the inmate's collect call. Id. He further responded that asking case manager Wesson to call Defendant Jones was not a substitute for the request form. Id. He

---

[7]The only copy of this request to staff is illegible due to the quality of the photocopy. Doc. No. 38-2, p. 13.

[8]The number of this grievance has been referred to as both 10-65 and 10-66. The undersigned has used 10-66 as it is the number which appears on the facility grievance log attached to the Special Report, 34-5, p. 3.

further found that there had been no retaliation against Plaintiff, and warned him of an extension of his grievance restriction should he continue to file "frivolous grievances and do not follow procedures." Id. Plaintiff appealed to the administrative review authority, but on June 8, 2010, Defendant Morton returned the appeal unanswered because "inmate on grievance restriction and/or proper documentation not included," and "additional issues submitted in the grievance appeal and not presented in the initial grievance to the facility head." Plaintiff's Objection to Dispositive Motion of CCF Defendants, Ex. 8-1. The box allowing re-submission of the appeal was not checked. Id.

On May 10, 2010, Plaintiff completed a request to staff addressed to Defendant Jones, grievance officer at CCF, asking for photocopies of seven past grievances. Plaintiff's Objection to Dispositive Motion of CCF Defendants, Ex. 16. Defendant Jones responded that "you should have all of these. Attach your copies to the disbursement to be copied. Then give it to your case manager." Id. Two days later, Plaintiff filed a second request to staff to Defendant Jones explaining that he did not have any copies of the noted grievances as he had sent the ones he had to the court. Plaintiff's Objection to Dispositive Motion of CCF Defendants, Ex. 17. This time Defendant Jones responded that "This has already been handled." Id. Over a month later, Plaintiff filed a third request to staff regarding the needed copies and addressed it to his case manager, Mr. Bradley. Plaintiff's Objection to Dispositive Motion of CCF Defendants, Ex. 19-7. In that request, Plaintiff repeats his need for copies of grievances he does not have. Id. Mr. Bradley replied about a week later stating "Mr. Burnett, Yes I did receive your request on this and have talked with you in person. I

apologize for not getting to this. I have been in training and have been assigned duties that precede this." Id. On June 29, 2010, Plaintiff filed Grievance No. 10-83, complaining about his inability to obtain copies of seven of these grievances despite his informal attempts to do so. Plaintiff's Objection to Dispositive Motion of CCF Defendants, Ex. 19-5. He claims that his case manager Mr. Bradley told Plaintiff that Defendant Jones had control of the documents in question, but she refused to provide copies of them. Id. at 19-6.

Plaintiff's grievance was returned unanswered by Defendant Jones on July 21, 2010 for the following reasons: (1) "OP-090124 section IX.B.2," because he failed to complete the information with regard to one of his former grievances–procedures required because Plaintiff is on grievance restriction; and (2) Plaintiff had attached the "wrong" request to staff to his grievance, attaching the one addressed to case manager Bradley rather than the initial request to staff he had delivered to Defendant Jones. Plaintiff's Objection to Dispositive Motion of CCF Defendants, Ex. 19-4. The box allowing for the correction of deficiencies and re-submission was not checked. Id. In her response to Plaintiff's interrogatory regarding the return of this grievance Defendant Jones explained: "I meant that the issue you were grieving had been previously addressed with me and responded to by me, and therefore that RTS dated May 10, 2010, would have been the correct RTS to attach to a grievance on that issue. This is important with regard to the time frames allowed for filing grievances. Per policy, individual Requests to Staff are not grievance records until they are attached to a grievance." Kathy Jones' Supplemental Response to Interrogatory No. 2 (attached to Response to Court Order, Doc. No. 66-3, p. 2). Plaintiff appealed to the administrative

review authority, but his appeal was returned unanswered on July 27, 2010. Plaintiff's Objection to Dispositive Motion of CCF Defendants, Ex. 19-1. Defendant Morton noted that Plaintiff was on grievance restriction and had not attached the proper documentation, and that his continued submission of grievance appeals without an affidavit would result in a further extension of his grievance restriction. Plaintiff's Objection to Dispositive Motion of CCF Defendants, Ex. 17.

## V. MOTION FOR SUMMARY JUDGMENT OF CCF DEFENDANTS

The CCF Defendants have raised six propositions in support of summary judgment. However, because not every Defendant is named in each count of Plaintiff's complaint, the undersigned has found it easier to address the Defendants' various arguments in the context of Plaintiff's specific claims. Accordingly, the discussion will be divided into the four counts contained in the Complaint.

### A. Count One - First Amendment Claim

In the first of their six propositions in support of summary judgment, the CCF Defendants argue that Plaintiff has failed to show a violation of his First Amendment rights or an attempt to interfere with his access to the courts in alleging that Linda Jester (not a defendant in this action) delayed sending out his legal mail by two days and did so with a retaliatory motive. CCF's Motion, 2-3. As noted above, Plaintiff names two Defendants in Count One of the Complaint: Kim Leatherwood and Joseph Sebenick.

In his response, Plaintiff argues that he was told by other prison employees, Diana Wesson and Ray Choate, that Linda Jester had told them that she did not intend to mail the

package containing his amended complaint. Plaintiff's Objection to Dispositive Motion of CCF Defendants, 1-2; Complaint, 9. He claims that it "was only due to a fortunate turn of events that the Plaintiff learned of this, and took considerable action involving other high ranking prison officials to get this mail sent out 2 ½ days after it should have been sent out." Plaintiff's Objection to Dispositive Motion of CCF Defendants, 1.

The undersigned finds that Defendants Sebenick and Leatherwood are entitled to summary judgment on Count One of the Complaint. First, even if his allegations regarding conversations with two other employees were to have any evidentiary support–and Plaintiff has provided none– they only implicate Linda Jester, who is not a Defendant in this case. Plaintiff candidly admits that Defendant Leatherwood is only nominally named in her official capacity as Jester's replacement, and now that he has been transferred from CCF, his claim against her for injunctive relief is moot.

Plaintiff's only allegation against Defendant Sebenick with regard to the 2 ½ day delay in mailing his amended complaint was (1) he was Linda Jester's supervisor, and (2) was a defendant in a lawsuit Plaintiff had filed. From these allegations, Plaintiff concludes that "it is apparent that they were trying to cause Plaintiff to miss his court deadline for filing [his amended complaint] to get the case against them dismissed." Complaint, 9. Plaintiff's allegation that Defendant Sebenick was Jester's supervisor and was a defendant in a lawsuit filed by Plaintiff are insufficient to show his participation in any attempt to delay mailing the package. "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." <u>Dodds v. Richardson,</u> 614 F.3d

1185, 1197 (10th Cir. 2010) (quoting <u>Ashcroft v. Iqbal</u>, --- U.S. ----, 129 S.Ct. 1937, 1948 (2009)), <u>cert. denied</u>, 131 S.Ct. 2150 (2011). It is not enough for Plaintiff to base his claim on conduct arising from Sebenick's "superintendent responsibilities," he must show not only that Sebenick's subordinate violated the Constitution, but that Sebenick "by virtue of his own conduct and state of mind did so as well." <u>Dodds</u>, 614 F.3d at 1198. Accordingly, it is recommended that Defendants Leatherwood and Sebenick be granted summary judgment on Count One of the Complaint.

### B. Count Two - Plaintiff's Claim of Retaliation

Next, the CCF Defendants claim that Plaintiff has failed to make a sufficient showing of retaliation. CCF's Motion, 3. In Count Two of the Complaint, Plaintiff alleges that Linda Jester and Defendant Sebenick retaliated against him for his litigation efforts by delaying the mailing of legal materials and by issuing three misconduct offense reports at or around the time that his amended complaint was filed. Complaint, 10.

Plaintiff responds that he has made a sufficient showing of retaliation by virtue of the suspicious timing of the misconduct offense reports initiated by Defendant Sebenick. Plaintiff's Objection to Dispositive Motion of CCF Defendants, 3. He claims that all three misconducts were issued only days after the mailing of Plaintiff's amended civil rights complaint that included Sebenick as a defendant. <u>Id.</u> He further claims that Linda Jester intended to retire at the end of May 2010, and hoped that delay of the civil rights lawsuit would prevent him from being able to serve her with process. <u>Id.</u> He also claims he was transferred to Davis Correctional Institution, and was given no reason for the transfer. <u>Id.</u>

He claims this transfer separates him from witnesses and documents, and creates a mootness argument that makes the retaliatory motive "clear and obvious." Id.

For the same reasons stated above, Defendant Leatherwood should be granted summary judgment on this claim. Plaintiff concedes her lack of involvement, and his transfer from CCF renders any request for injunctive relief against her–to the extent such would even be proper– moot. However, for the reasons explained below, the undersigned finds that both the timing and circumstances surrounding the misconduct charges initiated by Sebenick are enough to overcome Defendant Sebenick's motion for summary judgment on the issue of retaliation.

Plaintiff has come forward with evidence showing that at the same time his amended complaint–which included claims against Defendant Sebenick–was placed in the mail, Defendant Sebenick filed an "Incident Statement" alleging that Plaintiff placed 23 first class stamps on the priority mail package addressed to this Court, had purchased 56 first class stamps from the commissary since January 1, 2010, and had sent out 56 "individual letters re: 'Legal mail and priority mail' since January 1, 2010," which according to Defendant Sebenick showed that Plaintiff was obtaining postage stamps from other inmates at CCF. Plaintiff's Objection to Dispositive Motion of CCF Defendants, Ex. 3-2; Special Report, Doc. No. 34-3, p 27. The investigator's report, which noted the charged offense as "bartering," recites Plaintiff's statement that he had saved stamps from the previous year because he sends out a "large amount of mail," and that he wished to call a prison employee, Ray Choate, who would testify that the misconduct report was made in retaliation for

Plaintiff helping other offenders with their legal work. Id. at Ex. 3-3; Special Report, Doc. No. 34-3, p. 28. Plaintiff was found guilty of the misconduct offense on May 17, 2010, and received punishment in the form of a loss of 60 earned credits and a $5.00 fine. Special Report, Doc. No. 34-3, p. 25. Hearing officer Defendant Munday recited the following evidence in support of his finding of guilt:

> Offense report states is receiving postage stamps from other inmates at this facility. IA Sebenick's statement says offender Burnett has purchased 56 stamps and has mailed out 56 legal and priority letters prior to sending one with 23 stamps on 5-12-10. After checking commissary history as requested by offender he has only purchased 55 since Sept. of 2009. This shows receiving of stamps other than commissary. Staff is considered reliable and gains nothing from lying.

Id. Defendant Taylor affirmed the misconduct conviction, and Plaintiff appealed. Plaintiff's Objection to Dispositive Motion of CCF Defendants, Ex. 38-1, p. 13-14. Plaintiff claimed that he was not provided with a copy of the envelope which was the evidence relied on for the misconduct charge, and was neither allowed to call witness Ray Choate nor was there a discretionary action form explaining why Choate was not allowed to testify. Id. at p. 14. On due process review, Defendant Taylor agreed and ordered a rehearing. Plaintiff's Objection to Dispositive Motion of CCF Defendants, Ex. 38-1, p. 15. From all of the evidence submitted by the various parties herein, it appears that this rehearing has never been held and the punishment and security points accompanying the conviction remain. See Defendant Taylor's Supplemental Responses to Plaintiff's Request for Interrogatories, Interrogatory and Supplemental Response No. 4 (attached to Response to Court Order, Doc. No. 66). The DOC policy is less than clear, but it appears that Plaintiff has no remedy to address the lack

of a rehearing. Although an inmate may grieve the lack of a response, or appeal a final decision, this situation does not fit either of those scenarios. <u>See</u> Plaintiff's Objection to Dispositive Motion of CCF Defendants, Ex. 23, p. 22-23. DOC policy provides that "rehearing's [sic] should be conducted within 30 calendar days from the date of the order, unless circumstances dictate otherwise." <u>Id.</u> at p. 22.

On May 14, 2010, Defendant Sebenick filed another report regarding an incident that occurred on *March 26*, 2010. Plaintiff's Objection to Dispositive Motion of CCF Defendants, Ex. 4-3. Defendant Sebenick reported that on that date in March, Plaintiff had in his possession the legal mail of other inmates which he was mailing out of the facility. <u>Id.</u> He added that Plaintiff had also written out a request to staff for another inmate requesting a pass to come to the mailroom. <u>Id.</u> at Ex. 4-4. In his defense, Plaintiff offered the statements of two of the four inmates Defendant Sebenick had identified, in which they stated that Plaintiff only addressed an envelope for mailing and completed a request to staff in their presence and was not in possession of their legal mail without their presence. Plaintiff's Objection to Dispositive Motion of CCF Defendants, Ex. 4-5, 4-6. On June 2, 2010, Plaintiff was found guilty by disciplinary hearing officer Defendant Munday and received discipline in the form of a loss of 60 earned credits and a $5.00 fine. <u>Id.</u> at 4-7. The following day, Defendant Taylor affirmed. <u>Id.</u> Plaintiff appealed, and a due process review was conducted by "T. Piatt," who found that Plaintiff received due process and that the statement of Defendant Sebenick was evidence that Plaintiff was in possession of other offenders' legal mail. Plaintiff's Objection to Dispositive Motion of CCF Defendants, Ex. 4-10. Plaintiff appealed

to the administrative review authority on grounds that there was no evidence that he had done anything with regard to other inmates legal papers that was not allowed by DOC policy, and that this was one of three misconducts written by Defendant Sebenick in retaliation for the lawsuit Plaintiff had recently filed against him. Plaintiff's Objection to Dispositive Motion of CCF Defendants, Ex. 4-11, 4-12. The Director's Designee returned the appeal unanswered finding that Plaintiff was not entitled to a due process review since he is not entitled to earned credits. Id. at 4-13.

On May 20, 2010, Defendant Sebenick wrote a third disciplinary report against Plaintiff alleging that he was in possession of the legal mail of inmate Adam Cooksey. Plaintiff's Objection to Dispositive Motion of CCF Defendants, Ex. 5-2. At the disciplinary hearing, Plaintiff again offered the statement of inmate Cooksey, which the investigator took in lieu of his live testimony and Cooksey stated that Plaintiff only addressed the envelope containing Cooksey's legal mail but Cooksey mailed it, and that Plaintiff completed a request to staff for him but that Cooksey signed it. Id. at Ex. 5-4. Plaintiff was once again found guilty, lost 60 earned credits and was assessed a $5.00 fine. Id. at 5-5. Defendant Taylor affirmed. Id. Plaintiff appealed to the facility reviewing authority on grounds that he was sworn in before the hearing whereas Defendant Sebenick was not, there was no evidence to support the charge, and that it and two other misconducts were motivated by Defendant Sebenick's desire to retaliate against Plaintiff for his recent lawsuit against him. Plaintiff's Objection to Dispositive Motion of CCF Defendants, Ex. 5-6, 5-7. Once again, "J. Piatt" found that due process had been afforded and that the statement of Defendant Sebenick was

evidence that Plaintiff was in possession of another inmate's legal mail. Plaintiff's Objection to Dispositive Motion of CCF Defendants, Ex. 5-8. Acting warden J. Middleton affirmed. Id. Plaintiff appealed to the administrative review authority, but his appeal was returned unanswered again because he is ineligible for earned credits. Id. at Ex. 5-9.

In the procedural posture in which this issue is presented, the undersigned finds that Plaintiff has shown a genuine issue of material fact regarding whether Defendant Sebenick filed the three misconducts in question in retaliation for Plaintiff naming him as a defendant in his other federal lawsuit. Penrod v. Zavaras, 94 F.3d 1399, 1404 (10th Cir. 1996) ("Prison officials may not harass or retaliate against an inmate for exercising his right of access to the courts."); cf. Purkey v. Green, No. 00-3218, 28 Fed. Appx. 736, 745-46 (10th Cir. Aug. 7, 2001) ("Because a prisoner must first file a grievance in order to ultimately gain access to the courts to state a claim for relief under 42 U.S.C. § 1997e, then punishing him for actually filing grievances by placing him in disciplinary segregation would state a claim for both an access to the courts and a First Amendment violation). The standard for evaluating claims of retaliatory discipline is as follows:

> We have held that "[p]rison officials may not retaliate against or harass an inmate because of the inmate's exercise of his" constitutional rights. "This principle applies even where the action taken in retaliation would be otherwise permissible." As the Supreme Court made clear in Turner, however, it is not the role of the federal judiciary to scrutinize and interfere with the daily operations of a state prison, and our retaliation jurisprudence does not change this role. Obviously, an inmate is not inoculated from the normal conditions of confinement experienced by convicted felons serving time in prison merely because he has engaged in protected activity. Accordingly, a plaintiff "must prove that 'but for' the retaliatory motive, the incidents to which he refers, including the disciplinary action, would not have taken place." An inmate

claiming retaliation must "allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights."

Peterson v. Shanks, 149 F.3d 1140, 1144 (10th Cir. 1998)) (citations omitted); see also Fogle v. Pierson, 435 F.3d 1252, 1263-64 (10th Cir 2006). Thus, two facts are material to a showing of retaliatory discipline: a showing that "but for" the retaliatory motive, the disciplinary action would not have occurred; and (2) specific facts showing retaliation because of the exercise of the prisoner's constitutional rights. Peterson, 149 F.3d at 1144. Here, the undersigned finds that Plaintiff has raised a genuine issue of fact as to both elements.

First, Plaintiff's initial misconduct charge for bartering is closely related both in time and circumstance to his effort to mail an amended complaint by a deadline set by the court in an action then-pending in this district–a complaint which named Sebenick as a defendant. The incident report is dated the same date the amended complaint was mailed, and pertained to the number of stamps Plaintiff had placed on the envelope which contained his amended complaint. Plaintiff had written a request to staff that same day to an employee Defendant Sebenick supervised, Linda Jester, which clearly identified that the package was addressed to the United States District Court for the Western District of Oklahoma. Special Report, Doc. 34-2, p. 4. Upon facility review, the warden at CCF, Defendant Taylor, found that there was not sufficient evidence to support the misconduct conviction because Plaintiff had been denied a requested witness (who would have supposedly testified that the misconduct report was retaliatory), and was not provided with a copy of the envelope which formed the basis

of the offense even though a copy was available and had been requested. Defendant Taylor ordered a rehearing that has yet to occur.

A second misconduct report by Defendant Sebenick was also filed the same week Plaintiff filed his amended complaint, but pertained to an incident that had occurred almost two months earlier. The delay in bringing this charge, the fact that it pertained to Plaintiff's efforts to help other inmates with their legal work, and Defendant Sebenick's previous misconduct charge which was later found not to be supported by evidence support an inference that Defendant Sebenick was motivated by Plaintiff's legal action against him in filing these two charges. One week after Plaintiff filed his amended complaint, Defendant Sebenick reported a third incident report accusing Plaintiff of possessing the legal mail of another inmate. In all three instances, the only witness against Plaintiff was Defendant Sebenick.

When considering a claim such as this on summary judgment, the court must view the evidence and the inferences drawn from the record in the light most favorable to the nonmoving party. Calhoun, 982 F.2d at 1472; Manders, 875 F.2d at 264. Viewing the evidence in this light, it is such that a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 248. Accordingly, it is recommended that summary judgment for Defendant Sebenick be denied as to Count Two of the Complaint.

### C. Count Three - Denial of Due Process and Right to Equal Protection

In Count Three, which names CCF Defendants Sebenick, Munday, and Taylor, Plaintiff alleges that he was denied his rights to due process and equal protection with regard

to the three misconduct charges. He claims that he was denied due process because (1) he was put under oath but his accuser Defendant Sebenick was not; (2) that only the Plaintiff and the disciplinary hearing officer – Defendant Munday – were present at the hearing instead of a committee or tribunal; (3) there was no evidence of Plaintiff's guilt; and (4) numerous other inmates do the same things Plaintiff did and are not given misconducts. Complaint, 11.

The CCF Defendants' only response to this claim is that Plaintiff is not entitled to due process because he is not entitled to earned credits due to the nature of his conviction. CCF's Motion, 6-7. However, Plaintiff concedes that he is not claiming a right to due process stemming from his liberty interest in earned credits. See e.g. Plaintiff's Objection to Dispositive Motion of CCF Defendants, 5-8. He claims that security points were assigned for each of the write-ups, that he has never been granted a rehearing on one of the misconduct charges which Defendant Taylor acknowledged was not supported by evidence, and he was assessed monetary fines for each misconduct conviction. Id. at 7. With regard to the security points, Plaintiff claims that these were an "important" factor in his first consideration for parole in December of 2010. Id. The CCF Defendants make no argument with regard to Plaintiff's claims that these other actions deprived him of a liberty interest sufficient to invoke the protections of due process.

The Supreme Court has long held that the "requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." Board of Regents v. Roth, 408 U.S. 564, 569 (1972). The

Supreme Court has held that while "States may under certain circumstances create liberty interests which are protected by the Due Process Clause.... [T]hese interests will be generally limited to freedom from restraint which ... imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 483-84 (1995).

Plaintiff's punishment revoking non-existent earned credits was hardly atypical, and Plaintiff rightly concedes that this particular disciplinary measure implicates no liberty interest as it does not inevitably affect the duration of his sentence. See Sandin. 515 U.S. at 487. Despite Plaintiff's claim that the fine portion of his punishment implicated a liberty interest subject to due process protections, such is of dubious merit. See Hornsby v. Jones No. 10-6064, 392 Fed.Appx. 653, 655 (10th Cir. Aug. 20, 2010) (the "[prisoner's] punishment was hardly atypical. As a result of his disciplinary convictions, he received a total of 20 days of segregation, a reduction in credit level for 60 days, and two separate [$5.00] fines. These do not rise to the level of disciplinary measures that "inevitably affect the duration of [plaintiff's] sentence.").

His misconduct convictions also did not deprive him of a liberty interest because of the imposition of "security points." This is similar to the Tenth Circuit's decision that an adjustment review committee's decision to adjust a prisoner's classification level based on discretionary factors does not implicate a liberty interest. See Cardoso v. Calbone, 490 F.3d 1194, 1198 (10th Cir.2007); Templeman v. Gunter, 16 F.3d 367, 369 (10th Cir.1994) ("Changing an inmate's prison classification ordinarily does not deprive him of liberty,

because he is not entitled to a particular degree of liberty in prison."). Although Plaintiff claims that the security points issued as a result of these three misconduct convictions affected his parole consideration, such a connection is highly attenuated, especially given the fact that aside from the three misconduct convictions challenged in this action, Plaintiff has been convicted of at least fourteen other misconduct charges between February 7, 2000 and October 31, 2009. Special Report, Doc. 34-3, p. 49-50. Both the Tenth Circuit and the Oklahoma Supreme Court have found that Oklahoma parole statutes do not create a liberty interest in early release. Shirley v. Chestnut, 603 F.2d 805, 807 (10th Cir.1979); Shabazz v. Keating, 977 P.2d 1089, 1093 (Okla.1999). Absent a liberty interest in parole, Plaintiff is not entitled to due process protection to the extent security points may have been considered by the parole board. Shirley, 603 F.2d at 807.

Furthermore, the fact that a rehearing of Plaintiff's bartering misconduct has not yet been held – apparently leaving in place the fine and allegedly assigned security point – does not establish a violation of Plaintiff's right to due process. Prison regulations are "primarily designed to guide correctional officials in the administration of a prison. [They are] not designed to confer rights on inmates." Sandin, 515 U.S. at 481-82. Thus, the fact that prison officials established guidelines with regard to the timing of rehearings does not create a liberty interest, and so their failure to adhere to that policy is not a violation of Plaintiff's due process rights.

However, even if the undersigned were to find that Plaintiff has a protected liberty or property interest in the fines or security points, Plaintiff received constitutionally adequate

due process.  As noted, Plaintiff alleges only  that his right to due process was violated because (1) he was put under oath but his accuser Defendant Sebenick was not; (2) that only the Plaintiff and the disciplinary hearing officer – Defendant Munday – were present at the hearing instead of a committee or tribunal; (3) there was no evidence of Plaintiff's guilt. An inmate receives due process in conjunction with an institutional disciplinary proceeding if he is given: (1) advance written notice of the disciplinary charge, (2) an opportunity, consistent with the institutional safety and correctional goals, to present witnesses and documentary evidence, and (3) a written statement of the evidence relied on and the reasons for any disciplinary action.  Superintendent v. Hill, 472 U.S. 445, 454 (1985). If these protections are provided and there is "some evidence" to support the resolution of the disciplinary charge, then the Due Process Clause's procedural requirements have been satisfied. Id.

There is no requirement in the due process protections that a prison official be placed under oath and in fact, in many cases, the officer's report is used rather than live testimony. Secondly, there is no requirement for a tribunal or committee to hear the evidence, so a sole disciplinary officer is not a constitutional violation.  Lastly, while it may be contested, there was "some" evidence of Plaintiff's guilt based on the reports of Defendant Sebenick. Plaintiff has come forward with no facts to show that even if Sebenick had a retaliatory motive, Defendant Munday knew of the motive and knew there was no evidence to support the charges, but yet found Plaintiff guilty.

Finally, with regard to Plaintiff's claim that "numerous other inmates do the same

thing(s) Plaintiff did, and are not given write-ups and punished," Complaint, 11, Plaintiff has failed to come forward with any evidence supporting such a claim. In order to state a valid equal protection claim he must show that "the distinction between himself and other inmates was not reasonably related to some legitimate penological purpose." Templeman v. Gunter, 16 F.3d 367, 371 (10th Cir. 1994). Moreover, "the Equal Protection Clause requires the government to treat similarly situated people alike." Barney v. Pulsipher, 143 F.3d 1299, 1312 (10th Cir. 1998) (citing City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985)). Thus, in order to overcome the CCF Defendants' motion for summary judgment on his equal protection claim, Plaintiff must show that he was treated differently than other inmates as well as come forward with facts sufficient to "overcome a presumption of government rationality." Brown v. Zavaras, 63 F.3d 967, 971 (10th Cir. 1995). Here, Plaintiff only maintains that he was treated differently than inmates who are eligible for earned credits. Complaint, 11. As noted in connection with the motion for summary judgment of Defendant Morton, Plaintiff has failed to show that it is irrational to handle the *appeals* of those who receive discipline that may affect the duration of their confinement differently from those who receive discipline of a different nature. He also makes no showing that he was treated differently than any other group of "similarly situated" inmates during the underlying disciplinary process, or even identifies what similarity he is referring to with regard to the actions taken by Defendants Sebenick, Munday, or Taylor. Although Plaintiff alleges that Defendant Sebenick initiated misconduct charges against him with a retaliatory motive, he does not allege or show that such had anything to do with his earned credit

eligibility.

The undersigned also notes that Plaintiff has come forward with no evidence showing that Defendant Munday or Defendant Taylor had any personal participation in the acts which violated his constitutional rights. The only role alleged by Plaintiff on the part of these Defendants was that Defendant Munday served as the disciplinary hearing officer for the misconduct charges initiated by Defendant Sebenick, and Defendant Taylor reviewed the outcome of those proceedings. Unless Plaintiff had come forward with evidence showing that Defendants Munday or Taylor were not impartial for some reason (such as retaliation) their disposition of the charges against Plaintiff does not in and of itself constitute personal participation in an alleged violation of an inmate's right to due process. Otherwise, every disciplinary hearing officer and reviewing authority would be a potential defendant when an inmate was convicted of a misconduct charge:

> "An impartial decisionmaker is a fundamental requirement of due process" and "should be decided on a case-by-case basis." Nevertheless, since prisoners may file numerous lawsuits naming multiple prison officials as defendants, "courts should be alert not to sustain routine or pro forma claims of disqualification." "From a practical standpoint, requiring each staff member who is the subject of a separate lawsuit to disqualify himself from sitting in judgment of that inmate would heavily tax the working capacity of the prison staff." (quotations omitted).

> Standing alone, the allegation that the DHO was biased solely as a result of his being named a defendant in a civil suit by Brown does not rise to a due process violation.

Brown v. Rios, No. 06-1210, 196 Fed.Appx. 681, 684 (10th Cir. Sept. 18, 2006); cf. Smith

v. Maschner, 899 F.2d 940, 947 (10th Cir. 1990) (to call into doubt a factfinder's neutrality,

a plaintiff must present evidence that a defendant's motive in disciplining him was retaliation for prior lawsuits and or had a hidden motive in finding him guilty). In light of the forgoing, the undersigned finds that CCF Defendants Sebenick, Munday, and Taylor are entitled to summary judgment on Plaintiff's claim that his rights to due process and equal protection were violated as alleged in Count Three.

### D.  Count Four – Denial of Telephone Calls and Photocopies

In his fourth claim for relief, Plaintiff alleges that Defendants Taylor and Jones interfered with his First Amendment rights by failing to allow him to make telephone calls once he was moved to classification level two, and that Defendant Jones retaliated against him by refusing copies of grievances which Plaintiff claims he needed to submit to the Court in this case.  Complaint, 12.  More particularly, he claims that he was not allowed to make telephone calls during May 2010, even though he was classified as level two and therefore entitled under DOC policy to make calls to two people on his approved phone list.  Id.  He also claims that Defendant Jones thwarted his efforts to obtain copies of seven previous grievances from her which he needed to prosecute one of his federal lawsuits – grievances which he no longer had because he had sent his only copies to the court. Complaint, 12.

Defendants Jones and Taylor respond that these claims are not exhausted. CCF's Motion, 10.  Although acknowledging that Plaintiff filed a grievance as to both matters, they claim that CCF has no record of Plaintiff filing any appeals of the Defendant Taylor's decision denying them.  Id.  The documents attached to Plaintiff's objection to CCF's motion show that Plaintiff did indeed proceed with his appeals to the administrative review authority.

Here, the Court is faced with a situation in which Plaintiff attempted to exhaust his administrative remedies as provided by DOC's grievance policy. The CCF's Defendants' claim that Plaintiff failed to "properly" do so, together with Plaintiff's objection attaching the administrative documents in question raises a question as to whether Plaintiff exhausted all "available" remedies. As recently noted by the Tenth Circuit Court of Appeals:

> We have previously noted that the PLRA only requires the exhaustion of "available" administrative remedies. In fact, we have stated that district courts are "obligated to ensure that any defects in exhaustion were not procured from the action or inaction of prison officials" before dismissing a claim for failure to exhaust. Where prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of an administrative remedy, they render that remedy "unavailable" and a court will excuse the prisoner's failure to exhaust.

Little v. Jones, 607 F.3d 1245, 1250 (10th Cir. 2010).

After reviewing the administrative materials submitted by Plaintiff, the undersigned assumes, without deciding, that Plaintiff has exhausted the claims raised in Count Four.

However, the undersigned finds that Plaintiff has failed to come forward with facts showing a genuine issue with regard to his claims against Defendants Taylor and Jones in Count Four. Even assuming that Plaintiff was unaware that he was required to resubmit an approved phone list upon promotion to a higher classification level, the procedure was fully explained by Defendant Taylor in his response to Plaintiff's grievance. Plaintiff does not deny that he failed to follow this procedure, only that he was unaware of it. Because it is undisputed that Defendant Jones denied Plaintiff's request for phone privileges during a time that he had not submitted numbers for inclusion in the system, it cannot be inferred that the denial would not have occurred "but for" his pursuit of legal action against her.

It is a closer call with regard to the copies Plaintiff requested. The facts presented by Plaintiff clearly show that he was unsuccessful in obtaining the copies through the grievance process, and ultimately had to request them directly from the Clerk of Court in this district. Plaintiff's Objection to Dispositive Motion of CCF Defendants, Exs. 12, 14. A check of the file in Case No. CIV-10-257 does indeed show that Plaintiff submitted originals of the requested grievance materials in that case, supporting his need for CCF's copy of the materials which were apparently maintained by Defendant Jones. However, as noted above in connection with the undersigned's discussion of Count Two, a plaintiff alleging retaliation "must prove that 'but for' the retaliatory motive, the incidents to which he refers, including the disciplinary action, would not have taken place." An inmate claiming retaliation must "allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights." Peterson v. Shanks, 149 F.3d 1140, 1144 (10th Cir. 1998)). The undersigned finds that Plaintiff has failed to come forward with facts showing that "but for" Defendant Jones' retaliatory motive, he would have had no difficulty in receiving copies of some of his former grievances. Accordingly, it is recommended that summary judgment be granted in favor of Defendants Taylor and Jones on Count IV.

## RECOMMENDATION

For the reasons set forth above, it is recommended that the motion for summary judgment of Defendants Taylor, Munday, Jones, and Leatherwood [Doc. No. 35] be granted, and that the motion for summary judgment of Defendant Sebenick [Doc. No. 35] be granted as to Counts One, Three, and Four, and denied as to Count Two. The parties are advised of

their right to file an objection to this Report and Recommendation with the Clerk of this Court by August 30, 2011, in accordance with 28 U.S.C. § 636 and Fed.R.Civ.P. 72. The parties are further advised that failure to make timely objection to this Report and Recommendation waives his right to appellate review of both factual and legal questions contained herein. Moore v. United States, 950 F.2d 656 (10th Cir. 1991). This Report and Recommendation does not dispose of all issues referred to the undersigned Magistrate Judge in the captioned matter.

**ENTERED this 10th day of August, 2011.**

DOYLE W. ARGO
UNITED STATES MAGISTRATE JUDGE